# IN THE CIRCUIT COURT OF HAMILTON COUNTY, TENNESSEE

| | |
|---|---|
| MARTRESA SCRUGGS | ) |
|     Plaintiff, | ) |
| v. | )    Docket No. 21C494 |
| WALMART INC., | )    JURY DEMAND |
| CL PRODUCTS INTERNATIONAL, LLC, | ) |
| CANDLE-LITE COMPANY, LLC, and | ) |
| LUMINEX HOME DÉCOR AND FRAGRANCE COMPANY | |
|     Defendants. | |

FILED IN OFFICE
2021 MAY 21 PM 1:22
LARRY L. HENRY, CLERK
BY _____

COPY

## COMPLAINT

Comes now the Plaintiff, Martresa Scruggs, by and through counsel, and presents this action against the Defendants, Walmart Inc, CL Products International, LLC, Candle-Lite Company, LLC and Luminex Home Décor and Fragrance Company and states the following:

## INTRODUCTION

1. Plaintiff brings this action to address a serious safety-related defect in the design and manufacture of Walmart's Mainstays, Patio Essentials citronella candles, specifically the candles are becoming engulfed in flames and/or exploding.

2. For the last several years, Defendants have received information indicating purchasers of Mainstays candles have experienced excessive flames, flames that cannot be blown out or extinguished, flammable wax, and candles that explode while burning. These dangerous Mainstays candles have caused scorching or smoke



1

EXHIBIT B

damage to ceilings, and the explosions have created a shower of glass, melted wax, and/or burning wax. As a result, purchasers have been damaged.

3. Defendants knew or should have known of these problems and the dangerous conditions of these candles, yet failed to inform purchasers of the dangers of the candles and instead sold the Mainstays products and candles as suitable and safe for use to burn in households around people.

4. Plaintiff seeks to recover damages and equitable relief, including restitution and injunctive relief.

## JURISDICTION AND VENUE

5. Jurisdiction is proper in this Court as claims and damages of which the Plaintiff avers occurred in Hamilton County, Tennessee.

6. Venue is proper in this Court because the Defendants' false representations and misleading practices and unjust enrichment occurred in Hamilton County, Tennessee. Furthermore, Plaintiff purchased the Defendants' product and was severely injured by the product in Hamilton County, Tennessee.

7. The Circuit Court of Hamilton County, Tennessee has personal jurisdiction over the Defendants because they transact business in Tennessee with their various advertising methods and product sales directed toward Tennessee residents. Additionally the Plaintiff purchased the product at issue in Hamilton County, Tennessee.

## PARTIES

8. The Plaintiff, Martresa Scruggs, is a resident of Hamilton County, Tennessee.

9. The Defendants, Walmart, Inc. (hereinafter "Defendants" and/or "Walmart") is a corporation organized to do business under the laws of the state of Arkansas and

2

registered to do business in the State of Tennessee. Defendant's principal place of business is at 708 SW 8th Street, Bentonville, Arkansas 72716. Upon information and belief, none of Walmart's members are residents of Tennessee.

10. Defendant Walmart, may be served through its registered agent CT Corporation Systems, 300 Montvue Rd, Knoxville, Tennessee 37919.

11. Defendant CL Products International, LLC (hereinafter "Defendants" and/or "CL Products") is a limited liability company organized under the laws of the state of Illinois, with its principal place of business in Cincinnati, Ohio. Upon information and belief, none of CL Products International, LLC members are residents of Tennessee.

12. Defendant CL Products International, LLC may be served at its principal place of business, 10521 Millington Court, Cincinnati, Ohio 45242.

13. Defendant Candle-Lite Company, LLC (hereinafter "Defendants" and/or "Candle-Lite) is a limited liability company and is organized to do business under the laws of Illinois with its principal place of business is in Cincinnati, Ohio. Upon information and belief, none of Candle-Lite Company, LLC's members are residents of Tennessee.

14. Defendant Candle-Lite Company, LLC may be served at its principal place of business, 10521 Millington Court, Cincinnati, Ohio 45242. Upon information and belief, none of Candle-Lite Company LLC's, members are residents of Tennessee.

15. Defendant Luminex Home Décor and Fragrance Company, LLC (hereinafter "Defendants" and/or "Luminex") is a corporation organized under the laws of the state of Delaware.

16. Defendant Luminex Home Décor and Fragrance Company, LLC, may be served through its registered agent Corporate Creations Network, Inc., 119 E. Court Street

3

Cincinnati, Ohio 45202. Upon information and belief, none of Luminex Home Décor

and Fragrance Company LLC's, members are residents of Tennessee.

## FACTS

17. Defendant Walmart is in the business of selling and advertising for sale certain merchandise or retail products in trade or commerce throughout Tennessee and the United States.

18. Defendant Walmart has advertised and sold Mainstays-branded candles to consumers and other purchasers throughout Tennessee and the United States.

19. Defendant CL Products, Candle-Lite and Luminex are/or at all relevant times were, in the business of manufacturing certain merchandise or retail products, including Mainstays candles, which are to be sold in trade or commerce at retail stores throughout Tennessee.

20. Mainstays is a Walmart house brand.

21. During some or all of the time period from 2015 to present, Defendants CL Products, Candle-Lite and Luminex manufactured, sold and advertised Mainstays candles for sale by Defendant Walmart. Mainstays candles are manufactured by Defendants CL Products, Candle-Lite and Luminex exclusively for Walmart and its subsidiarie4s.

22. During some of all of the time period from 2015 to the present, Mainstays candles were sold by Defendant Walmart throughout Tennessee and the United States as candles that were safe for use.

23. At all relevant times, Mainstays candles contained labeling on the front of the candles, similar to the following:

4



24. At all relevant times, Mainstays candles contained labeling on the bottom of the candles similar to the following:



WARNING / ADVERTENCIA:
BURN WITHIN SIGHT. KEEP AWAY FROM THINGS
THAT CATCH FIRE. KEEP AWAY FROM CHILDREN.
UTILICELA BAJO SUPERVISIÓN. MANTÉNGALA ALEJADA DE MATERIALES
INFLAMABLES. MANTÉNGALA FUERA DEL ALCANCE DE LOS NIÑOS.

WARNING: This product can expose you to chemicals including carbon monoxide and soot which are known to the State of California to cause cancer and birth defects or other reproductive harm. For more information go to www.P65Warnings.ca.gov.

See inside label for directions and precautions.

TM & © 2019 Walmart Inc.
All Rights Reserved.
Distributed by/Distribuido por
Walmart Inc., 702 SW 8th ST,
Bentonville, AR 72716

SU Tropical
MS20-603-003-16

7.01 in dia x 5 in H
(17.8 cm x 12.7 cm)

8 11381 02768 1

MADE IN CHINA/HECHO EN CHINA
For Customer Service, please call toll free: 1-844-660-3700

PEEL HERE

25. Defendant's Mainstays candles did not contain any information or warning or

warning about excessive flames, flames that cannot be blown out or extinguished,

flammable wax, candles that explode while burning or other defects and dangers. By

6

labeling and selling Mainstays candles in this manner, Defendants sought to create, and did create an image of the candles that would lass a reasonable consumer to believe Defendants' Mainstays candles were completely safe for sue.

26. Defendants' product labeling, advertising and marketing of the Mainstays candles were material to a reasonable consumer.

27. At the time of the Defendants' labeling, advertisements, marketing, and other representations, and as Defendants already knew or should have known, the candles were dangerous, lacking adequate warnings and contained representations and omissions that were false, deceptive and misleading to consumers seeking to purchase the candles.

### Plaintiff's Experience with Mainstays Candle

28. On or about May 17, 2020, Plaintiff purchased a Mainstays citronella candle from the Walmart store located at 490 Greenway View Dr, Chattanooga, Tennessee 37411.

29. On or about May 24, 2020, Plaintiff lit her Mainstays candle for the first time. She was relaxing with her family after she gotten home from work.

30. Plaintiff lit her Mainstays candle her porch. After approximately two hours, it exploded throwing hot wax over the Plaintiff's face, right arm and upper thigh causing her excruciating pain.

31. The wax from the candle also splattered on her clothes, porch furniture and onto the side of her home.

32. Due to the pain, Plaintiff lost consciousness.

33. Plaintiff was taken to the emergency room where she was treated for severe burns.

7

34. As a direct and proximate result of this aforementioned occurrence, Plaintiff was injured and damaged, including but not limited to the following:

   a. Burns to her face, right arm, forearm, and right thigh, which required medical treatment;

   b. Permanent scarring and disfigurement from the burns to her face, right arm and right leg;

   c. Loss of sensation and disfigurement from the burns to her face, right arm, forearm, and right thigh;

   d. Photosensitivity of the scar tissue, which forces the Plaintiff to keep covered and interferes with her enjoyment of recreational activities;

   e. Pain, embarrassment, and emotional distress;

   f. Lost time from work;

   g. Cost of medical treatment; and

   h. The amount paid for the subject candle.

35. Defendants had notice at least as early as March 2016 of other incidents in which Mainstays candles caused similar injuries and/or damages.

36. Prior to Plaintiff's injury, multiple customers called Defendants Walmart's customer service telephone hotline and/or posted on Walmart's Facebook page regarding dangerous experience that they had with Mainstays candles. Customers described candles with flames several feet high that could not be blown out; candles in which all the wax was liquified and aflame; candles causing scorching or smoke damage to ceilings, and candles exploding while burning, creating a shower of glass, melted

8

wax, and/or burning wax. On information and belief, Defendants CL Products, Candle-Lite and Luminex were informed of or were aware of these reports.

37. Since Plaintiff's injury, additional customers have reported similar incidents and have filed multiple lawsuits across the United States.

38. As of the filing of this complaint, Defendants continue to manufacture and sell Mainstays candles. Further, Defendants have not warned their customers of the defect or instructed purchasers on how to handle situations in which the candles become engulfed in flames and/or explode. Defendants have failed to disclose the existence of this defect to Plaintiff and other customers and purchasers for the cost of purchasing the defective candles and/or the injuries and damages they suffered as a result of the Defendants' conduct.

39. This action is brought by the Plaintiff against Defendants to recover all money paid by Plaintiff to Defendants for purchase of the Mainstays candles, for recovery of medical damages caused to Plaintiff by the Mainstays candles, for punitive damages, attorney's fees, costs, and for all other remedies and damages available to those aggrieved by the Defendants' conduct.

## COUNT 1

## NEGLIGENCE

40. Plaintiff incorporates by reference the above and foregoing paragraphs in her Complaint as fully set forth herein.

41. Defendants knew, or by exercise of reasonable care, should have known that the Mainstays candle it sold to Plaintiff was dangerous when used in an ordinary manner.

9

42. Defendants had no reason to believe that Plaintiff would realize that the candles were dangerous.

43. Defendants owed Plaintiff a duty of care to Plaintiff including, but not limited to:

    a. A duty to refrain, in the course of selling Mainstays candles, from actions and omissions that would cause a reasonably foreseeable risk of harm to Plaintiff;

    b. A duty to refrain, in the course of marketing Mainstays candles, from actions and omission that would cause a reasonably foreseeable risk of harm to Plaintiff;

    c. A duty to refrain, in the course of causing and ordering the production of Mainstays candles, from actions and omissions that would cause a reasonably foreseeable risk of harm to Plaintiff;

    d. A duty to take reasonable steps to mitigate reasonably foreseeable risks of harm to Plaintiff caused by the use of candles Defendants sold, marketed, and ordered to be manufactured;

    e. A duty to adequately warn Plaintiff of the reasonably foreseeable risk of harm from the use of Mainstays candles sold and marketed;

    f. A duty to utilize adequate testing and institute other controls to ensure Mainstays candles were safe for ordinary use; and

    g. A duty to supply Plaintiff with adequate instructions regarding the safe use of mainstays candles they sold and marketed.

44. Defendants breached their duty of care to Plaintiff, and was thereby negligent, through its actions and omissions, including but not limited to, the following:

10

a. Producing and selling candles without requiring reasonably safe specifications for the candles and their components when Defendants knew, or by the exercise of reasonable care, should have known, that injury to Plaintiff was reasonably likely to result from their failure to do so;

b. Producing and selling candles without requiring safety testing and adequate quality control when Defendants knew, or by exercise of reasonable care, should have known, that injury to Plaintiff was reasonably likely to result from their failure to do so;

c. Manufacturing and selling candles that Defendants knew, or by exercise of reasonable care, should have known, could not be burned without unreasonable risk of injury and property damage;

d. Continuing to manufacture and sell Mainstays branded candles after Defendants received reports of Mainstays candles functioning unsafely, causing injury, property damage, burning out of control, flashing over, burning with excessively high flames, and/or exploding during use, when Defendants knew, or by exercise of reasonable care, should have known that continuing to sell the candles was reasonably likely to result in injury to the Plaintiff;

e. Failing to take any remedial or corrective measures in response to reports that Mainstays candles functioned unsafely, causing injury, property damage, burning out of control, flashing over, burning with excessively high flames, and/or exploding during use, when Defendants knew, or by exercise of

11

reasonable care, should have known that continuing to sell the candles was reasonably likely to result in injury to the Plaintiff;

f.   Manufacturing and selling candles without adequate warning to Plaintiff about the risk of harm from burning candles when Defendants knew, or by exercise of reasonable care, should have known, that injury to the Plaintiff was likely to result from doing so;

g.   Manufacturing and selling candles without providing adequate warning to consumers about the risk of burning wax and/or explosions when Defendants knew, or by exercise of reasonable care, should have known, that injury to the Plaintiff was likely to result from doing so;

h.   Manufacturing and selling candles without providing adequate safety instructions about how to safely extinguish a candle that began burning out of control, burning with high flames, or when the candle flashed over (the wax itself started burning) when Defendants knew, or by exercise of reasonable care, should have known, that injury to the Plaintiff was likely to result from doing so;

i.   Manufacturing and selling candles without providing adequate safety instructions about how to recognize that a candle had become dangerous and instructions on how to extinguish the flames when the candle began burning out of control, burning with high flames, or when the candle flashed over (the wax itself started burning) when Defendants knew, or by exercise of reasonable care, should have known, that injury to the Plaintiff was likely to result from doing so.

12

45. Defendants knew, or by exercise of reasonable care, should have known the aforementioned breaches of duty were reasonably likely to result in injury or damage to the Plaintiff.

46. As a direct and proximate result of Defendants' negligence, Plaintiff was injured and damaged as set forth above.

47. By selling Mainstays candles to Plaintiff after Defendants received multiple complaints that the candles were dangerous, Defendants acted outrageously, recklessly, and with willful disregard to the rights of others, and in a manner warranting punitive damages to punish Defendants' conduct and to deter similar future conduct by Defendants or others.

WHEREFORE, for the above and foregoing reasons, Plaintiff prays for judgement for herself under Count I of this Complaint against Defendants for compensatory damages in an amount to be determined by a jury, for punitive damages in an amount sufficient to punish Defendants and effectively discourage similar future conduct, for Plaintiff's costs incurred herein, for pre- and post-judgment interest5, and for all other relief this Court determines to be just and necessary.

## COUNT II
## RES IPSA LOQUITOR
## (IN THE ALTERNATIVE TO COUNT 1)

48. Plaintiff incorporates by reference Paragraphs 1 through 47 of this Complaint as thoroughly set forth herein.

13

49. The incident in which the Plaintiff was injured, as described in Paragraphs 28 through 34, is an incident of the type that ordinarily occurs as a result of negligence by a manufacturer and/or seller.

50. Excessively high flames and candle flashover (the entire fuel pool burning) are not things that normally occur when a candle is burned in an ordinary manner.

51. There is no reason that excessively high flames and candle flashover could have resulted from burning the candle in an ordinary manner, without a negligent act or omission by the Defendants.

52. The incident described in Paragraphs 28 through 34 was caused by instrumentalities Defendants managed and had the right to control.

53. Defendants managed or had the right to control the following instrumentalities that contributed to cause the incident described in Paragraphs 28 through 34;

    a. Employees and agents of the Defendants who created and communicated specifications to the factory for the manufacture of Mainstays candles;

    b. Employee and agents of the Defendants who failed to take remedial or corrective action in response to reports of Mainstays candles functioning unsafely, causing injury, causing property damage, burning out of control, burning with high flames, and/or exploding during use;

    c. The composition and design of the candle; and

    d. Warnings to consumers of the foreseeable dangers of using this product.

54. Plaintiff did nothing to modify or alter the candle.

55. After purchasing the candle, Plaintiff stored it in a clean, dry place and did nothing to misuse the candle or introduce any foreign material to the candle.

14

56. After purchasing the candle and bringing it home from the store, the only things Plaintiff did to the candle prior to the incident described in Paragraphs 28 through 34 was set the candle on her table outside and light the wick, all in the ordinary manner.

57. Defendants have superior knowledge and access to information about the cause of the incident that is the subject of this complaint in at least the following respects:

    a. Defendants have superior knowledge of the requirements and specifications provided to the manufactures of the candle;

    b. Because Mainstays is a house brand manufactured exclusively for Walmart and its subsidiaries, Defendants have superior knowledge of, or have access to, the formula of the wax used in the candle, the material used for the wick, and the composition and tolerances of the container of the candle;

    c. Because Mainstays is a house brand manufactured exclusively for Walmart and its subsidiaries, Defendants have superior knowledge of, or access to information about any testing or quality control measures implemented with respect to the production of the candle;

    d. Defendants have superior knowledge of the process and considerations involved in product labeling, usage instructions, and safety warnings for the candle; and

    e. Defendants have superior knowledge of the complaints and notifications of candles burning out of control or exploding that Defendants received prior to the Plaintiff's injures.

58. Defendants knew, or by the exercise of reasonable care should have known, that their negligence was reasonably likely to result in injury or damage to the Plaintiff.

59. As a direct and proximate result of the Defendants' negligence, Plaintiff was injured as set forth in Paragraphs 28 through 34 of this complaint.

WHERFORE, for the above and foregoing reasons, Plaintiff prays for judgement for herself under Count II of this Complaint against Defendants for compensatory damages in an amount to be determined by a jury, for punitive damages in an amount sufficient to punish Defendants and effectively discourage similar future conduct, for Plaintiff's costs incurred herein, for pre- and post-judgment interest, and for all other relief this Court determines to be just and necessary.

## COUNT III
### STRICT LIABILITY-DEFECTIVE PRODUCT DESIGN AND MANUFACTURE

60. Plaintiff incorporates by reference Paragraphs 1 through 59 of this Complaint.

61. Defendants sold the Mainstays candle that is the subject of this complaint, in the ordinary course of business.

62. The candle was produced exclusively for Walmart and its subsidiaries.

63. Defendants had the right to control and did control the design of the Mainstays candle sold to the Plaintiff.

64. At the time the candle was sold to the Plaintiff, it was in a defective condition that was unreasonably dangerous when put to anticipated use.

65. Plaintiff used the candle in a manner reasonably anticipated by placing it on a table outside on her porch away from any flammable materials and lighting the wick.

66. The candle was defectively designed in the following respects:

16

a. Failure to specify wick characteristics (*e.g.* material, diameter, shape, stiffness, fire resistance, pretreatments) that were safe to use with the candle container and the wax formulation and additives (*e.g.* fragrance, colorant, dye, pigment, Vybar, triple pressed stearic acid, palm stearic, UV absorbers, petrolatum) used in the candle;

b. Failure to specify a formula for wax and additives which, when combined in the finished candle, demonstrated oil content, flash point, melting point, and ignition point that were safe for the combination of the candle's container and wick;

c. Failure to design to limit the flame height to three inches or less;

d. Failure to design to meet industry standards for end of useful life of the candle;

e. Failure to adequately test the candle's design for safety and adherence to industry standards;

f. Failure to provide instructions with the candle about how to safely extinguish the candle if it burned out of control, burned with flames more than three inches high, or when it flashed over (the wax itself started burning); and

g. Any other design defects discovered in the course of this litigation.

67. The candles were defectively manufactured in the following respects:

a. Failure to adhere to the design specifications for the candle's container;

b. Failure to use an appropriate wick for the candle container and the combination of wax and additives used in the candle;

17

c. Failure to treat the wick with additives to ensure that it was sufficiently flame retardant for use in the candle

d. Failure to use wax and additives which, when combined in the finished candle, demonstrated oil content, flash point, melting point, and ignition point that were safe for the combination of the candle's container and wick;

e. Failure to test the oil content, flash point, melting point, and ignition point of the finished candle;

f. Failure to test the candle flame's height to ensure that it did not exceed three inches;

g. Failure to adequately test the candle for safety and adherence to industry standards;

h. Failure to conduct quality control testing for consistency with respect to safety characteristics;

i. Inclusion of foreign material in candle wax;

j. Failure to provide instructions with the candle about how to safely extinguish the candle if it burned out of control, burned with flames more than three inches high, or when it flashed over (the wax itself started burning); and

k. Any other manufacturing defects discovered in the course of this litigation.

68. The incident described in Paragraphs 28 through 34 of this Complaint was caused by the Defective Mainstays candle Defendants sold to Plaintiff.

69. As a direct and proximate result of the Defendants' design and manufacturing defects herein described, Plaintiff was injured as set forth in Paragraphs 28 through 34 of this complaint.

18

70. Defendants did not provide Plaintiff adequate warnings about dangers from using the candle.

71. The incident described in Paragraphs 28 through 34 of this Complaint occurred when Plaintiff used the candle in a manner reasonably anticipated by placing it on a non-flammable, level surface, away from any flammable materials and lighting the wick.

72. Defendants did not warn Plaintiff of the following:

   a. That if the flames got high, the candle was unsafe and should be extinguished;

   b. That the candle wax might get so hot while the candle was lit that all, or most of the candle wax would liquify, and that if that happened, the candle was unsafe and should be extinguished;

   c. That the entire pool of melted wax might catch fire (flashover);

   d. That if the candle flashed over, the temperature would be significantly hotter and pose a greater fire hazard than a properly burning candle;

   e. That the container might break or explode, propelling broken glass and/or burning or melted wax; and

   f. That the candle might explode propelling hot wax.

73. Defendants did not provide any warning or instruction to Plaintiff regarding recognizing when the candle was burning unsafely and how to safely extinguish it under such circumstances.

74. Defendants had no reason to believe that ordinary consumers, such as the Plaintiff, would be aware of the aforementioned risks and dangers.

19

75. As a direct and proximate result of the Defendants' failure to provide adequate warnings, Plaintiff was injured as set forth in Paragraphs 28 through 34 of this complaint.

76. Defendants acted outrageously, recklessly, and with willful disregard to the rights of others, and in a manner warranting punitive damages to punish Defendants' conduct and to deter similar future conduct by Defendants or others. Punitive damages are warranted by Defendants' willful disregard for the life-threatening consequences of selling candles that Defendants had reason to know were not safely designed and manufactured, and because Defendants continued to sell defective Mainstays candles even after receiving notice that they were unsafe, flashing over, starting fires, and exploding.

WHERFORE, for the above and foregoing reasons, Plaintiff prays for judgement under Count III of this Complaint against Defendants for compensatory damages in an amount to be determined by a jury, for punitive damages in an amount sufficient to punish Defendants and effectively discourage similar future conduct, for Plaintiff's costs incurred herein, for pre- and post-judgment interest, and for all other relief this Court determines to be just and necessary

## COUNT IV
## STRICT LIABILITY- FAILURE TO WARN

77. Plaintiff incorporates by reference Paragraphs 1 through 76 of this Complaint.

78. Defendants sold the Mainstays candles that are the subject of this Complaint in the ordinary course of business.

20

79. At the time the candle was sold to the Plaintiff, they were unreasonably dangerous when put to reasonably anticipated use without the user's knowledge of all the candle's characteristics.

80. Defendants did not provide the Plaintiff with adequate warnings about the dangers from using the candle.

81. The incident described in Paragraphs 28 through 34 of this Complaint occurred when the Plaintiff used the candle in a manner reasonably anticipated by placing it on a table outside on her porch and lighting the wick.

82. Defendants acted outrageously, recklessly, and with willful disregard to the rights of others, and in a manner warranting punitive damages to punish Defendants' conduct and to deter similar future conduct by Defendants or others.

83. Punitive damages are warranted because Defendants were aware of the life-threatening risks that ordinary consumers would not have knowledge of, but nevertheless shoes not to provide warnings.

84. Punitive damages are warranted because Defendants continue to sell candles without adequate warnings even after receiving notice of dangerous incidents were occurring that might be prevented by adequate warnings, and after receiving notice that consumers did not know how to extinguish the candles after they flashed over or exploded.

## COUNT V
## UNJUST ENRICHMENT

85. Plaintiff incorporates by reference Paragraphs 1 through 84 in this Complaint.

21

86. When Defendants manufactured, named, labeled, marketed, advertised, distributed, and sold Plaintiff the Mainstays candles, Defendants knew the products were negligently and improperly manufactured and sold as described above.

87. As a result, Plaintiff (a) paid a sum of money for a product that was not as represented; (b) received a lesser product than labeled, advertised and marketed; (c) was deprived of the benefit of the bargain because the products were different than what Defendants had represented; (d) was deprived of the benefit of the bargain because the products had less value than what was represented; ( e) did not receive products that measured up to her expectations as created by Defendants; (f) did not receive a product that was suitable for use as a candle for home or outdoor use; and (g) suffered damage as a result of the purchase and use of the product.

88. As a result of the Defendant's deceptive, negligent and misleading labeling, advertising, marketing, manufacturing and sales of the Mainstays candles, Plaintiff purchased Defendant's products and conferred a benefit upon Defendants by purchasing products that were not as advertised and were not suitable for use as candles for home or outdoor use, which benefits Defendants appreciated and accepted.

89. Defendants were enriched at the expense of Plaintiff and others through payment of the purchase price for Defendants' Mainstays candles.

90. As a direct and proximate cause of Defendants' wrongful conduct and unjust enrichment, Plaintiff suffered damages in an amount to be determined at trial.

91. Under the circumstances, it would be against equity and good conscious to permit Defendants to retain the ill-gotten benefits that they received from Plaintiff in light of

the fact that the Mainstays candle purchased by Plaintiff was not what Defendants represented them to be. Thus, it would be inequitable or unjust for Defendants to retain the benefits without restitution to Plaintiff for the monies paid to Defendants for the Mainstays candles.

92. By reason of the foregoing, Defendants should be required to account for and disgorge all monies, profits, and again which they have obtained at the expense of the Plaintiff.

WHEREFORE, for the above and foregoing reasons, the Plaintiff prays for judgment under Count V of this Complaint against Defendants for compensatory damages in an amount to be determined by a jury, for punitive damages in an amount sufficient to punish Defendants and effectively discourage similar future conduct, for attorney's fees, expenses and costs, and that the Plaintiff be granted all other and further relief as the Court deems appropriate.

## COUNT VI
## BREACH OF TENNESSEE CONSUMER PROTECTION ACT

93. Plaintiff incorporates by reference Paragraphs 1 through 92 in this Complaint.

94. The Defendants are in violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 *et seq.*

95. Plaintiff is a "person" as defined in Tennessee Consumer Protection Act § 47-18-103(14).

96. Plaintiff is a "consumer" as defined in Tennessee Consumer Protection Act § 47-18-103(3).

97. Plaintiff purchased from the Defendants "goods" as defined in Tennessee Consumer Protection Act § 47-18-103(8).

23

98. Defendants engaged in "trade", "commerce" or a "consumer transaction" as defined in Tennessee Consumer Protection Act § 47-18-103(20).

99. Defendants "knowingly" placed the "goods" into "commerce" and engaged in a "consumer transaction" as defined in Tennessee Consumer Protection Act § 47-18-103(11), § 47-18-103(8), and § 47-18-103(20).

100. Defendants engaged in unfair or deceptive practices as defined in Tennessee Consumer Protection Act § 47-18-104(7).

101. The Defendants are in violation of the Tennessee Consumer Protection Act § 47-18-101 *et seq.* including, but not limited to:

    a. Selling candles with defects as described above, which were known or reasonably should have been known by Defendants without disclosing the defects to the Plaintiff and other consumers;

    b. Failing to notify customers or recall candles like the one sold to the Plaintiff after Defendants were made aware of other incidents during which the candles started fires, exploded, burned out of control, flashed over, other or otherwise caused injury or property damage; and

    c. Failing to warn Plaintiff of dangers and risks as described above, when Defendants had no reason to believe that ordinary consumers would be aware of the risks and dangers.

102. The incident that is the subject of this Complaint, described in Paragraphs 28 through 34 herein, was caused by the defects Defendants failed to disclose as identified above.

24

103.    As a result of the Defendants' deceptive and unfair practices, Plaintiff suffered an ascertainable loss as described in Paragraphs 28 through 34 of this Complaint.

104.    As a result of the Defendants' deceptive and unfair practices, Plaintiff suffered additional damages as described in Paragraphs 28 through 34 of this Complaint.

105.    Defendants' conduct as set forth herein was wonton, willful, outrageous, and performed with reckless disregard for the rights and interest of Plaintiff.

106.    Defendants' conduct warrants punitive damages in an amount that will punish Defendants and deter similar conduct in the future by Defendants and others.

107.    Plaintiff has incurred attorney fees and costs eligible to be awarded as provided under Tennessee Consumer Protection Act § 47-18-109.

WHEREFORE, for the above and foregoing reasons, Plaintiff prays for judgment for herself under Count VI of this Complaint against Defendants for compensatory damages in an amount to be determined by a jury, for punitive damages in an amount sufficient to punish Defendants and effectively discourage similar future conduct, for attorney fees authorized by Tennessee Code Annotated § 47-18-109 for Plaintiff's costs herein incurred, for pre- and post-judgment interest, and for all other relief this Court determine to be just and necessary.

## COUNT VII
## BREACH OF TENNESSEE PRODUCTS LIABILITY ACT

108.    Plaintiff incorporates by reference Paragraphs 1 through 107 in this Complaint.

109.    The Defendants are in violation of the Tennessee Products Liability Act, Tenn. Code Ann. § 29-28-101 *et seq.*

25

110. Under Tennessee Products Liability Act § 29-28-102(2), "Defective condition" means a condition of a product that renders it unsafe for normal or anticipatable handling and consumption;

111. Under Tennessee Products Liability Act § 29-28-102(4), "Manufacturer" means the designer, fabricator, producer, compounder, processor or assembler of any product or its component parts;

112. Under Tennessee Products Liability Act § 29-28-102(5), "Product" means any tangible object or goods produced;

113. Under Tennessee Products Liability Act § 29-28-102(6), "Product liability action" for purposes of this chapter includes all actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product. "Product liability action" includes, but is not limited to, all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever";

114. Under Tennessee Products Liability Act § 29-28-102(7), "Seller" includes a retailer, wholesaler, or distributor, and means any individual or entity engaged in the business of selling a product, whether such sale is for resale, or for use or consumption. "Seller" also includes a lessor or bailor engaged in the business of leasing or bailment of a product; and

26

115. Under Tennessee Products Liability Act § 29-28-102(8), "Unreasonably dangerous" means that a product is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics, or that the product because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller, assuming that the manufacturer or seller knew of its dangerous condition.

116. The incident that is the subject of this Complaint, described in Paragraphs 28 through 34 herein, was caused by the defects Defendants knew of or should have known of as identified above.

117. As a result of the Defendants' violation of the Tennessee Product Liability Act, Plaintiff suffered an ascertainable loss as described in Paragraphs 28 through 34 of this Complaint.

118. As a result of the Defendants' violation of the Tennessee Product Liability Act, Plaintiff suffered additional damages as described in Paragraphs 28 through 34 of this Complaint.

119. As a direct and proximate result of the Defendant's violation, Plaintiff has been injured in an amount of $3,000,000.00.

120. As a further result of Defendant's violations, Plaintiff is entitled to an order enjoining such future conduct and such other orders and judgment which may be necessary to disgorge Defendant's ill-gotten gains and to restore Plaintiff any money paid for the candles.

121.   The actions of the Defendants were done willfully, intentionally and with reckless disregard for harm that would be caused to Plaintiff, and Defendant's conduct warrants imposition of exemplary damages to deter Defendants and others from similar circumstances, from committing such actions in the future.

122.   Plaintiff has standing to pursue this claim as she has suffered actual economic damage as a proximate result of the Defendants' actions as set forth herein.

123.   Defendants conduct warrants punitive damages in an amount that will punish Defendants and deter similar conduct in the future by Defendants and others.

124.   Plaintiff has incurred attorney fees and costs eligible to be awarded as provided under Tennessee Code Annotated § 29-28-101 *et seq.*

WHEREFORE, for the above and foregoing reasons, the Plaintiff prays for judgment against Defendants as follows:

1.  Compensatory Damages in an amount of $3,000,000.00;

2.  Punitive damages in an amount sufficient to punish Defendants and effectively discourage similar future conduct;

3.  Other damages as determined by a jury;

4.  Treble damages as allowed under Tennessee Consumer Protection Act;

5.  Attorney fees, expenses and costs allowed under Tennessee Consumer Protection Act and the Tennessee Products Liability Act;

6.  And that the Plaintiff be granted all other and further relief as the Court deems appropriate.

28

Respectfully submitted,

EPSTEIN LAW FIRM, PLLC

By: _____

Valerie W. Epstein      BPR# 013785
Attorney for Plaintiff
724 Cherry Street
Chattanooga, TN 37402
423-265-5100  telephone
423-490-7308  facsimile

29