UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| MARTRESA SCRUGGS, | ) |
| *Plaintiff*, | ) |
| | ) Case No. 1:21-cv-145 |
| v. | ) |
| | ) Judge Curtis L. Collier |
| WALMART INC. *and* HOME ESSENTIALS BRANDS LLC d/b/a MAINSTAYS PATIO ESSENTIALS, | ) Magistrate Judge Christopher H. Steger |
| *Defendants*. | ) |

**M E M O R A N D U M**

Before the Court is Defendant Walmart Inc.'s (hereinafter "Defendant") motion for summary judgment (Doc. 81). Plaintiff responded in opposition (Doc. 93), Defendant replied (Doc. 94), and Plaintiff submitted a sur-reply[1] (Doc. 101). The matter is now ripe for review.

**I.     BACKGROUND**

On or about May 17, 2020, Plaintiff's boyfriend, Martrel Usher, purchased a Mainstays brand three-wick citronella bucket candle from Defendant's store in Chattanooga. (Doc. 93 at 2; Doc. 82 at 2.) The candle was manufactured by Defendant Home Essentials Brands LLC ("Home Essentials"). (Doc. 82 at 2.)

On May 24, 2020, Plaintiff used a multiuse lighter to light the candle for the first time. (*Id.*; Doc. 93-1 at 4; Doc. 81-1 at 6.) She did not read the label before lighting it. (Doc. 82 at 2.) She saw the candle flaming up like a small campfire with black smoke and boiling wax. (*Id.*) However, she decided not to extinguish the candle. (*Id.*) Instead, she fell asleep on a nearby plastic chair. (Doc. 92-1 at 7; Doc. 81-1 at 7.) Plaintiff was then awoken by a loud "boom." (Doc. 93-1

---

[1] Plaintiff's sur-reply will not be considered because it was filed without leave of Court. E.D. Tenn. L.R. 7.1(d).

at 6; Doc. 92-1 at 5 .) She saw that her shorts were on fire. (Doc. 81-1 at 7.) Because she was in "extraordinary" pain, she asked Usher to take her to the emergency room. (*Id.* at 8.) Plaintiff asked her daughter to record the candle, which was continuing to burn. (*Id.*) Plaintiff was burned on her right arm and the back part of her right leg. (*Id.* at 9.) Plaintiff's family members disposed of the candle into the garbage. (*Id.* at 12–13.)

Plaintiff brought suit against Defendants Walmart Inc. and Home Essentials alleging claims of negligence, strict liability for defective product design and manufacture, strict liability for failure to warn, unjust enrichment, breach of the Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-101, *et seq.*, and breach of the Tennessee Products Liability Act, Tenn. Code Ann. §§ 29-28-101, *et seq*. (Doc. 6.)

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing no genuine issue of material fact remains. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003).

If the moving party meets its initial burden, "the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). A genuine issue for trial exists if there is "evidence on which the jury could reasonably find for the plaintiff." *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)) (internal quotations omitted). In addition, should the nonmovant fail to provide

2

evidence to support an essential element of its case, the movant can meet its burden by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmovant. *Anderson*, 477 U.S. at 248–49. The court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). If the court concludes, based on the record, that a fair-minded jury could not return a verdict in favor of the nonmovant, the court should grant summary judgment. *Anderson*, 477 U.S. at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

### III. ANALYSIS

As a preliminary matter, the Court will apply state substantive law and federal procedural law in this diversity case. *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)).

Defendant argues that Plaintiff's claims are barred by the Tennessee Products Liability Act of 1978 ("TPLA"), Tenn. Code Ann. §§ 29-28-101 (West 2023), *et seq.*, for two reasons, Plaintiff's Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-104 (West 2023), claim fails for two reasons, Plaintiff's punitive-damages claim is statutorily barred, and Plaintiff cannot recover under Tennessee's modified comparative fault system. The Court will address each in turn.

### A. Tennessee Products Liability Act

Defendant argues Plaintiff's claims are barred by the TPLA because Defendant is a nonmanufacturer seller. (Doc. 82 at 1.) In the alternative, Defendant argues Plaintiff has no evidence the candle was in a defective condition or unreasonably dangerous when it left Defendant's control. (*Id.*)

#### 1. Whether Defendant is a Seller

Defendant argues it is a nonmanufacturer seller against whom a product liability action cannot be maintained pursuant to Tennessee Code Annotated § 29-28-106 (West 2011). (Doc. 82 at 5.) Defendant maintains that none of the enumerated exceptions apply to it. (*Id.*)

Plaintiff responds that Defendant "exercised substantial control over all aspects of the citronella candles sold in [its] stores." (Doc. 93 at 4.) Plaintiff describes the testing requirements Defendant imposes on its manufacturers and the safety protocols it requires its manufacturers to follow during manufacture. (*Id.*) Plaintiff also points out the random product testing conducted at various stores across the country by a company hired by Defendant. (*Id.* at 5.) Plaintiff concludes that Defendant was substantially involved both in preproduction and postproduction testing of her candle. (*Id.*)

Defendant replies that Defendant did not exercise substantial control over the candle's chemical composition, which is what Plaintiff surmises caused the accident. (Doc. 94 at 3.)

A "seller" is a "retailer, wholesaler, or distributor, and means any individual or entity engaged in the business of selling a product, whether such sale is for resale, or for use or consumption." Tenn. Code Ann. § 29-28-102(7) (West 2012). A seller cannot escape liability for an alleged defect in a product if the seller "exercised substantial control over that aspect of the

4

design, testing, manufacture, packaging or labeling of the product that caused the alleged harm for which recovery of damages is sought." *Id.* § 29-28-106(1).

Here, Defendant is a seller as defined by the TPLA. The Court further concludes that Defendant exercised substantial control over the testing, manufacture, packaging, and labeling of the candle which may have harmed Plaintiff. Jack Murphy, chief executive officer of Defendant Home Essentials, testified that all candle labels are reviewed by Defendant's attorneys to ensure they meet industry requirements and consumer-protection-agency standards. (Doc. 93-2 at 4.) Regarding Defendant's control over the testing, Murphy testified that Defendant sometimes had Defendant Home Essentials manufacture a sample and then send it in for preproduction testing prior to full manufacturing, and if the product failed the testing, Defendant would not accept the product. (Doc. 93-2 at 9.) In addition to preproduction testing and preshipment testing, Defendant "also goes the extra step of in-store testing," where a third-party laboratory "will go into the stores and pull a product off the shelf, take it back to their U.S. lab and do the testing . . . to make sure it's conforming." (*Id.* at 7.) In-store testing has "always been a requirement with [Defendant] with anything that they purchase." (*Id.* at 8.) These undisputed facts about the relationship between Defendant and Defendant Home Essentials indicate that Defendant may have possessed the control over Defendant Home Essentials that is necessary for Plaintiff to hold Defendant liable.

The Court disagrees with Defendant's argument that it did not exercise substantial control over the chemical composition of the candle. The extensive testing Defendant required manufacturer Defendant Home Essentials to conduct was directly related to the candle's chemical composition. Performance burn testing was used to verify the candle's weight, burn time, burn rate, and wax-consumption percentage. (Doc. 122-2 at 16.) Since 2021, Defendant has also

5

imposed "wind requirements" requiring a candle to stay lit up to a certain wind speed for a certain amount of time. (Doc. 93-3 at 3.) When Defendant Home Essentials was unable to comply with the wind requirement because it would require using a too large wick, Defendant subsequently excepted Defendant Home Essentials from the wind requirement. (*Id.* at 3–4.) This occurred after Plaintiff's 2020 injury. With all reasonable inferences drawn in Plaintiff's favor, the Court concludes Plaintiff has demonstrated that Defendant exercised substantial control over the relevant aspects of the candle that caused her injury.

Plaintiff's product liability action may proceed against Defendant because Defendant falls within one of the five statutory exceptions.

### ii. Whether the Candle was Defective or Unreasonably Dangerous

Defendant argues in the alternative that Plaintiff cannot establish a prima facie case under the TPLA because the candle was not defective or unreasonably dangerous when it left Defendant's control. (Doc. 82 at 6.) Defendant argues the record lacks evidence that the candle was defective or unreasonably dangerous. (*Id.* at 8.) Namely, Plaintiff did not see the incident happen because she was asleep, she does not know why the incident happened, and her expert witness, Charles Coones, was unable to identify a defect or dangerous condition that caused the incident. (*Id.*)

Plaintiff responds that the candle was unreasonably dangerous because an ordinary consumer would expect the candle not to explode when properly handled. (Doc. 93 at 8.) Plaintiff also argues that the candle was defective when it left Defendant's control because her expert's testing revealed that a candle sold by Defendant around when she purchased her candle contained a higher proportion of combustible oils than candles currently produced and sold. (*Id.* at 9.)

6

Case 1:21-cv-00145-CLC-CHS   Document 123   Filed 07/26/23   Page 6 of 12   PageID #: 1159

Defendant replies that Plaintiff is speculating that the candle was defective because she has no evidence of the candle's chemical composition. (Doc. 94 at 3.) Plaintiff's candle was thrown into the trash after the incident and has not been recovered, so there has not been any analysis or testing of the allegedly defective candle. (*Id.* at 1.)

"[U]nder Tennessee law, establishing a prima facie products-liability claim requires that 'the plaintiff must show: (1) the product was defective and/or unreasonably dangerous, (2) the defect existed at the time the product left the manufacturer's control, and (3) the plaintiff's injury was proximately caused by the defective product.'" *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008). A defective condition renders the product unsafe for normal or anticipatable handling and consumption. Tenn. Code Ann. § 29-28-102(2). An unreasonably dangerous product is a product that "is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to the characteristics," or it is a product that "because of its dangerous condition would not be put on the market by a reasonably prudent manufacturer or seller, assuming that the manufacturer or seller knew of its dangerous condition." *Id.* § 29-28-102(8). The former is the consumer expectations test, *Sigler*, 532 F.3d at 483–84, and the latter is the prudent manufacturer test, *id.* at 484 n.7 (quoting *Jackson v. Gen. Motors Corp.*, 60 S.W.3d 800, 806 (Tenn. 2001)). "The general rule in Tennessee is that the issue of whether a product is defective or unreasonably dangerous is one for the jury." *Id.* at 484 (quoting *Jackson*, 60 S.W.3d at 805).

Here, Defendant has not met its burden at the summary-judgment stage of demonstrating that no reasonable jury could find that the candle was unreasonably dangerous. Defendant essentially argues that because Plaintiff does not have definitive proof that the candle which

7

injured her was defective or unreasonably dangerous, it could not have been defective or unreasonably dangerous. But Plaintiff appears to have used the candle in a normal and anticipable manner typical to an ordinary consumer with knowledge common to the community. Prior to using the candle, she had stored it in her living room. (Doc. 93-1 at 2.) The first time she used the candle, she set it on the floor of her porch in the center of the area, which seems to be a typical placement for a bucket citronella candle. (Doc. 92-1 at 4.) She lit the candle using a multipurpose lighter that is intended for grills and candles, among other uses. (Doc. 93-1 at 4.) She was also alone on the porch, with nothing hanging from the ceiling. (*Id.* at 5, 6.) When the candle exploded, Plaintiff was asleep in her chair (Doc. 92-1 at 5), which necessarily means that she was not interacting with the candle at the time of the incident and could not have improperly handled it.

After reviewing the evidence in the light most favorable to Plaintiff, the Court concludes that a reasonable jury could conclude that the candle was defective or unreasonably dangerous. The Court will **DENY** Defendant's motion for summary judgment on Plaintiff's TPLA claim.

### B. Tennessee Consumer Protection Act

Next, Defendant argues Plaintiff's claim under the TCPA must be dismissed because Plaintiff has not suffered an ascertainable loss of money or property independent from her alleged personal injury.

Defendant argues Plaintiff cannot recover under the TCPA because her only alleged loss of money or property is the "amount paid for the subject candle," but her boyfriend Martrel Usher had purchased it, so she has not suffered an ascertainable loss as defined by the TCPA. (Doc. 82 at 10.)

Plaintiff responds that "Plaintiff and her boyfriend purchased the candle" and "the candle was the Plaintiff's property," and so she suffered a loss of her personal property. (Doc. 93 at 12.)

For a person to bring a claim under the TCPA, she must have suffered "an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value." Tenn. Code Ann. § 47-18-109(a)(1) (West 2019). Damages cannot flow solely from the personal injuries sustained; rather, there must be an ascertainable loss of money or property independent of the personal injuries. *Young v. Black & Decker U.S., Inc.*, 533 F. Supp. 3d 578, 581 (M.D. Tenn. 2021).

Plaintiff admits that her boyfriend, Martrel Usher, purchased the candle at Defendant's store. (Doc. 92 at 1.) In other words, Usher—not Plaintiff—was Defendant's customer. In *Gant v. Santa Clarita Laboratories*, the Tennessee Court of Appeals affirmed the trial court's dismissal of a TCPA action because the plaintiff's uncle, rather than the plaintiff, had purchased the money order and the plaintiff had the product shipped to his uncle's address because someone had been opening the plaintiff's mail. No. M2005-01819-COA-R3-CV, 2007 WL 1048948, at *1, *2 (Tenn. Ct. App. Apr. 5, 2007). Here, as in *Gant*, Usher was Defendant's customer. Although Plaintiff may have been the person using the candle, only Usher could bring a TCPA claim to recover for the loss of the candle. Plaintiff does not meet the requirements of § 47-18-109(a)(1).

Defendant also argues Plaintiff lacks evidence of unfair or deceptive acts or practices. Because Plaintiff cannot show that she had suffered an ascertainable loss of money or property, the Court need not discuss whether Defendant engaged in the use or employment of an unfair or deceptive act or practice.

The Court will **GRANT** Defendant's motion for summary judgment on Plaintiff's TCPA claim.

### C. Punitive Damages

Next, Defendant argues Plaintiff's claim for punitive damages against Defendant is barred by Tennessee Code Annotated § 29-39-104 (West 2013). Pursuant to § 29-39-104(c),

> The seller of a product other than the manufacturer shall not be liable for punitive damages, unless the seller exercised substantial control over that aspect of the design, testing, manufacture, packaging or labeling of the product that caused the harm for which recovery of damages is sought; the seller altered or modified the product and the alteration or modification was a substantial factor in causing the harm for which recovery of damages is sought; or the seller had actual knowledge of the defective condition of the product at the time the seller supplied the same.

Defendant argues that Plaintiff cannot establish that any of the three exceptions apply to her claim. (Doc. 82 at 11.) Plaintiff responds that Defendant was substantially involved in the testing, manufacture, labeling, packaging, and design of the candle "throughout the entire phase of the candle production." (Doc. 93 at 12.) Defendant replies that the evidence in the record "does not support this." (Doc. 94 at 5.)

As previously discussed, Defendant exercised substantial control over the testing, manufacturing, packaging, and labeling of the candle. Because Defendant squarely fits within the first exception provided by § 29-39-104(c), Plaintiff may seek punitive damages from Defendant.

### D. Plaintiff's Negligence

Finally, Defendant argues Plaintiff was at least fifty percent at fault for the candle incident because she burned the candle without reading any of the warnings on the label, she decided not to extinguish the candle even after seeing the flames behave like a small campfire with black smoke

10

and boiling wax, and she fell asleep while the candle was burning on the floor near her. (Doc. 82 at 12.)

Plaintiff responds that the explosion was not foreseeable and a reasonable jury likely would not conclude that an individual closing her eyes for "a few moments in the presence of a candle" is fifty percent negligent. (Doc. 93 at 13.) Plaintiff also submits that "no outside factors," such as other people or dogs on the deck or anything hanging from the ceiling, contributed to the candle exploding or to her resulting injuries. (*Id.*)

"While comparative fault is typically a question for the trier of fact, summary judgment is appropriate in those situations where reasonable minds could only conclude that the plaintiff was at fault, and that the plaintiff's fault was equal to or greater than the fault of the defendant." *Norris v. Pruitte*, No. 01A01-9709-cv-00506, 1998 WL 1988563, at *3 (Tenn. Ct. App. Aug. 24, 1998) (citing John A. Day & Donald Capparella, Tennessee Law of Comparative Fault, 12–18 (1997)).

After reviewing the evidence in the light most favorable to Plaintiff, the Court concludes that granting summary judgment is inappropriate. A jury could reasonably conclude that Plaintiff was not fifty percent or more at fault for this accident. Although Plaintiff did not read the warnings on the candle, she explained that she thought the candle would behave like a "regular candle." (Doc. 81-1 at 6.) From the evidence in the record, it is not the only possible conclusion that Plaintiff used the candle in a negligent manner, even considering how she left the candle unattended during her nap. Plaintiff's expert witness testified that "most people if they were looking at a candle behaving the way [Plaintiff] described, would've probably immediately tried to extinguish it and dispose of it." (Doc. 92-2 at 3.) Although there is evidence Plaintiff may have deviated from what a reasonable person would have done in her situation, that does not mean she

11

was necessarily at least half at fault for her accident. Defendant has not met its burden of showing that no reasonable jury could conclude that Plaintiff's fault was equal to or greater than that of Defendant. Thus, Defendant is not entitled to summary judgment on the issue of comparative negligence.

IV.     **CONCLUSION**

For the foregoing reasons, the Court will **GRANT IN PART** Defendant Walmart Inc.'s motion for summary judgment (Doc. 81). Plaintiff's Tennessee Consumer Protection Act claim against Defendant Walmart Inc. will be **DISMISSED WITH PREJUDICE.**

**AN APPROPRIATE ORDER WILL ENTER.**

/s/
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**